IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL E. GILBERT,                    Case No. 6:14-cv-00394-AA
                                          OPINION AND ORDER
          Plaintiff,

     v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

          Defendant.
_____

Robyn M. Rebers
Robyn M. Rebers, LLC
P.O. Box 3530
Wilsonville, OR 97070
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Jordan D. Goddard
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
     Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Michael Gilbert brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

On June 28, 2010, plaintiff filed this most recent application for DIB. Tr. 11, 179. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 95-110. On September 7, 2012, an ALJ hearing was held before Honorable Paul G. Robeck; plaintiff was represented by counsel and testified therein, as well as a vocational expert ("VE"). Tr. 29-61. On September 18, 2012, ALJ Robeck issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 11-22. After the Appeals Council declined review, plaintiff filed a complaint in this court. Tr. 1-11.

## STATEMENT OF FACTS

Plaintiff was born on December 19, 1962, and was 47 years old on the date of disability, and 49 years old at the time of the hearing. Tr. 13. Plaintiff did not complete high school but later earned his GED. Tr. 197. His prior work includes: grocery

clerk, auto sales, retail sales, and gas station attendant. Tr. 20. Plaintiff alleges he became disabled on April 12, 2010 due to bipolar disorder, cervical fusion C-4 through C-7, depression, and severe anxiety. Tr. 196.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weight "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 1484, 1486 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c).

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that claimant can perform other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) &

(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 13. At step two, the ALJ determined that plaintiff has the following severe impairments: "cervical radiculopathy, status post cervical fusion; undifferentiated somatoform disorder; bipolar disorder; and cannabis dependence, in reported remission." Id. At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment. Id.

Since plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work:

> [able to] lift an carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8 hour day; sit for 6 hours in an 8 hour day; frequently perform all postural activities, except only occasionally climb ladders, ropes, and scaffolds; no team work or close cooperation with others; and only occasional contact with the public.

Tr. 15.

At step four, the ALJ determined that plaintiff could not perform his past relevant work. Tr. 20-21. At step five,

the ALJ found, based on the VE's testimony, that plaintiff could perform a significant number of jobs existing in the national and local economy despite his impairments, such as companion, food assembler, and wiring harness assembler. Tr. 21. Accordingly, the ALJ concluded plaintiff was not disabled under the Act. Tr. 22.

## DISCUSSION

Plaintiff alleges the ALJ erred by failing to: (1) provide clear and convincing support for his credibility assessment; (2) properly assess medical opinion evidence; (3) properly assess the lay witness testimony of Shirley Gilbert; and (4) formulating an RFC supported by substantial evidence.

I. <u>Plaintiff's Credibility</u>

Plaintiff contends the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for rejecting his statements concerning the extent and severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of symptoms, and the record, as here, contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281

(9th Cir. 1996)(citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)(citation omitted).

At the hearing, plaintiff testified he is disabled due to severe social anxiety, depression, "manic" highs and lows, obsessive/compulsive behavior, and cervical spine problems related to a prior surgery. See generally Tr. 32-60. Plaintiff explained that due to his severe social anxiety, he becomes paranoid, confrontational, often angry, and is generally difficult to work with. Tr. 43-44. He stated his anxiety also leads to panic attacks. Tr. 45. Plaintiff feels uncomfortable around others, and stays in his backyard to avoid his neighbors. Tr. 36. Plaintiff described experiencing periods of reckless "highs" wherein

Page 7 - OPINION AND ORDER

he spends money excessively and had previously engaged in
numerous extramarital affairs, as well as severe "lows,"
wherein plaintiff feels hopeless, disturbed by intrusive
thoughts, depressed, and sometimes suicidal. Tr. 37, 38, 42,
54. Plaintiff also described obsessive/compulsive behaviors
including checking the doors and windows of his home
precisely three times each time he leaves his home, and
needing to thoroughly clean his bathroom before each use.
Tr. 35, 41. With regard to physical impairment, plaintiff
described knee pain which makes it difficult for him to use
stairs. Tr. 33. Plaintiff further described pain in his neck
and shoulders with certain head movements and postures. Tr.
33.

After summarizing plaintiff's hearing testimony, the
ALJ found plaintiff only partially credible, as his symptoms
were disproportionate to the objective findings.
Specifically, the ALJ found plaintiff's alleged limitations
were inconsistent with his testimony and the record. Tr. 16,
18.

The ALJ found plaintiff's credibility questionable
regarding why he stopped working at previous jobs. While
plaintiff told the ALJ he left his job at Whole Foods Market
due to severe anxiety, panic disorder, and paranoia (tr.
32), he previously told a consulting psychologist that "with

most of his jobs, he simply quit them." Tr. 380. As the ALJ
noted, plaintiff told another consulting psychologist he
quit his job at Whole Foods Market due mainly to his lengthy
commute. Tr. 18, 337. Inconsistencies in a plaintiff's
testimony can serve as clear and convincing reasons for
discrediting that testimony. <u>Burch v. Barnhart</u>, 400 F.3d
676, 680 (9th Cir. 2005). A plaintiff's contradictory
reports regarding the rationale for leaving employment is a
valid credibility consideration. <u>See</u> <u>Bruton v. Massanari</u>,
268 F.3d 824, 828 (9th Cir. 2001) (claimant's statement that
he was laid off, rather than unable to work due to his
impairment, was a cogent reason to disregard his subjective
pain testimony).

    The ALJ also pointed out plaintiff's sporadic work
history, which "raise[d] a question as to whether the
claimant's continuing employment is actually due to medical
impairments . . . the claimant gave no compelling reason why
he had not worked from 2004, six years prior to the alleged
onset date . . . ." Tr. 18. Indeed, a plaintiff's poor work
history or lack of motivation to work is a relevant
credibility issue. <u>See</u> <u>Thomas</u>, 278 F.3d at 959 (claimant's
"poor work history" showing "little propensity to work in
her lifetime" were clear and convincing reasons to discount
her testimony). While it is arguable that plaintiff's

failure to seek work or retain employment was related to his psychological impairments, the ALJ's reasons for limiting the weight given to claimant's testimony regarding his work history are nonetheless rational, and must be upheld. See Burch, 400 F.3d at 679 (variable interpretations of the evidence are insignificant so long as the ALJ's interpretation is reasonable); Batson v. Comm'r of Soc. Sec. Admin., 359, F.3d 1190, 1198 (9th Cir. 2004)(an ALJ's rational assessment of the evidence must be upheld).

Further, the ALJ found that plaintiff's symptoms were not consistent with the objective evidence. The ALJ noted plaintiff's treatment for both his physical and mental impairments were relatively conservative. Tr. 18. "Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)(citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995).

Regarding plaintiffs's neck pain complaints following his 2009 cervical fusion, the ALJ accurately noted his neck exams had been normal. Tr. 18, 313, 367. At the hearing, however, plaintiff described frequent long-duration muscle spasms as a result of his neck impairment. Tr. 33, 53. He further indicated "always" having neck and back pain on a

Pain & Fatigue Questionnaire. Tr. 239. As the ALJ noted, the record does not support the full extent of plaintiff's subjective complaints. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 680-81 (citation omitted).

Turning to plaintiff's allegations relative to alleged mental limitations, the ALJ found plaintiff's treatment had also been fairly routine. Tr. 18. Specifically, the ALJ recognized plaintiff had not been subject to any psychiatric hospitalizations during the relevant time period, and certain medications diminished plaintiff's mood cycling and depression. Tr. 18, 352, 355-56. Further, despite his testimony to the contrary, the ALJ noted plaintiff had declined to take Lorazepam for his anxiety over a long period of time. Tr. 18, 374. While improved functioning or stability with treatment does not necessarily translate to the ability to maintain gainful employment, it was proper for the ALJ consider those factors in weighing plaintiff's credibility to the extent they contradicted his subjective testimony. Burch, 400 F.3d at 680.

Finally, the ALJ noted that plaintiff's allegations of social phobia were not as disruptive as plaintiff described. Tr. 18. In particular, plaintiff's history of repeated

extramarital relationships over the years was cited by the ALJ as evidence of plaintiff's ability to "develop relationships." Tr. 18-19. This rationale is not entirely persuasive given the fact that these "relationships" developed in conjunction with plaintiff's periods of mania arising from his bipolar disorder. Pl.'s Opening Br. 22. Clearly the self-serving nature of plaintiff's ability to arrange out-of-state extramarital affairs while experiencing a manic "high" is not directly transferable to maintaining professional and/or personal relationships required in most workplace environments. Even so, although interpretations as to the import of this evidence may differ, the ALJ's interpretation was not wholly unreasonable. Accordingly, the ALJ did not commit reversible error.[1] <u>Batson</u>, 359 F.3d at 1198.

For the foregoing reasons, the ALJ sufficiently pinpointed testimony he found not credible such that this court is confident plaintiff's testimony was rejected on permissible grounds. <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ's credibility finding was reasonable and supported by substantial evidence in the

---

[1] Also note that, although the ALJ did not specifically mention it in his credibility assessment, plaintiff testified to attending two church services weekly, which further belies his assertion of extreme social phobia and inability to function in social settings. Tr. 40.

Page 12 - OPINION AND ORDER

record; as such, this court may not second-guess the ALJ's
rational interpretation. Thomas, 278 F.3d at 959. The ALJ's
credibility assessment is affirmed.

II. Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly weigh the
opinions of the various examining and reviewing physicians.
Pl.'s Opening Br. 10. The ALJ is responsible for resolving
conflicts and ambiguities in the medical testimony.
Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir.
2008)(quoting Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th
Cir. 1995)). An ALJ must state clear and convincing reasons
for rejecting the uncontradicted opinion of a treating or
examining doctor, or specific and legitimate reasons,
supported by substantial evidence, for rejecting a
contradicted opinion. Bayliss v. Barnhart, 427 F.3d 1211,
1216 (9th Cir. 2005). The parties agree the medical opinions
are contradicted, and therefore the "specific and
legitimate" standard applies. Pl.'s Opening Br. 12-13.

John Cochran, Ph.D. examined plaintiff, administered a
battery of tests, and provided an opinion on July 5, 2012
regarding plaintiff's limitations. Tr. 377-392. The ALJ
indicated he gave Dr. Cochran's opinion "some weight" but
determined the doctor's objective findings did not support
Dr. Cochrnan's limitation findings. Tr. 18, 19. Dr. Cochran

opined that plaintiff had "moderately severe limitations in various areas of work-related mental functioning." 391-92. The doctor indicated via checkbox that plaintiff had moderately severe limitations in his ability to "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods of time," and "interact appropriately with the general public." Tr. 391-92.

However, as the ALJ noted, Dr. Cochran's test results do not appear consistent with his ultimate conclusions. Tr. 18, 19. For example, the doctor reported plaintiff's concentration was adequate through the examination, despite its six-hour duration. Tr. 18, 382. Further, Dr. Cochran reported plaintiff's Neurobehavioral Cognitive Status Examination ("NCSE") "did not show deficits in his concentration and attention." Tr. 386. The doctor later concluded, however, that plaintiff had "moderately severe" impairment in "maintain[ing] attention and concentration for extended periods of time." Tr. 391.

Further, the ALJ noted plaintiff's memory testing did not support mild or moderate deficits regarding immediate and delayed verbal memory, which Dr. Cochran endorsed in his report. Tr. 18, 386-87. Dr. Cochran further noted plaintiff's testing for "verbal and visual memory appeared

Page 14 - OPINION AND ORDER

to not show deficits." Tr. 386. On other testing, plaintiff
scored in the average range for verbal concept formation and
reasoning; superior range for perceptual and fluid reasoning
and spatial processing; average range for working memory
abilities; and superior range for processing speed "related
to one's cognitive ability." Tr. 385. Nevertheless, Dr.
Cochran concluded claimant had "mild" impairment in
remembering "locations and work-like procedures ... [and]
very short, simple instructions," and "moderately severe"
impairment in "understanding and remembering detailed
instructions." Tr. 391. He further indicated plaintiff was
moderately severely impaired in carrying out detailed
instructions and maintaining concentration over long periods
of time. Tr. 391. Given the apparent discrepancies between
Dr. Cochran's test results and his ultimate conclusions, the
ALJ's decision to give his assessment only partial weight
was not unreasonable. The ALJ, therefore, did not commit
reversible error.

The ALJ also provided specific and legitimate reasons
for affording Dr. Kessler's opinion only partial weight. Tr.
19. The ALJ noted the doctor's examination did not "support
a finding that [plaintiff] could not perform complex tasks"
due to his one point from normal range score on the Montreal
Cognitive Assessment. Dr. Keller's assessment also showed

plaintiff's concentration was within normal limits. Id.
However, Dr. Kessler indicated that plaintiff could perform
only simple and routine tasks. Tr. 340.

To the extent the ALJ erred in finding plaintiff could
perform tasks more complex than "simple and routine," any
error was harmless, considering the ALJ's step five
conclusion. Tr. 21-22. An ALJ's omission of a valid
limitation in the RFC is harmless if the representative
occupations at step five would still be appropriate for a
claimant if that limitation had been included. Stubbs-
Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).
Both "food assembler"[2] and "wire harness assembler"[3] demand
only Level 2 reasoning skills, requiring a worker to
"[a]pply commonsense understanding to carry out detailed but
uninvolved written or oral instructions." D.O.T., Appendix
C, "Components of the Definition Trailer," available at 1991
WL 688702. This court has held repeatedly that the
limitation to perform simple and routine tasks is not
inconsistent with Reasoning Level 2 jobs. See, e.g. Dschaak
v. Colvin, 2015 WL 181803, *6 (D.Or. January 14, 2015),
Trujillo v. Colvin, 2014 WL 2213218, *4 (D.Or. May 27,

---

[2] Food assembler: D.O.T. 319.484-010, L, R2, M2, SVP 3.

[3] Wire harness assembler: D.O.T. 728.684-010, L, R2, M1, SVP
3.

Page 16 - OPINION AND ORDER

2014), <u>Delatorre v. Colvin</u>, 2013 WL 6284389, *6 (D.Or. December 3, 2013); <u>see also</u> <u>Lara v. Astrue</u>, 305 Fed.Appx. 324, 326 (9th Cir. 2008).

Thus, even if the ALJ erroneously found Dr. Kessler's report "does not support a finding that [plaintiff] cannot perform complex tasks," (Tr. 19), his error was harmless based on the jobs identified at step five.

Plaintiff further contends the ALJ incorrectly gave the reviewing opinions of Drs. Lundblad and Anderson only "some weight." Tr. 20. Drs. Lundblad and Anderson indicated plaintiff could carry out detailed and complex instructions, but would be moderately limited in maintaining attention and concentration over extended periods, getting along with peers and coworkers, and public interaction. Tr. 70-71, 86-87. However, the ALJ's RFC narrowed potential jobs to those "limited to no team work or close cooperation with others, and only occasional contact with the public." Tr. 20.

Plaintiff argues the ALJ erred in failing to find plaintiff moderately limited in maintaining attention and concentration over long periods, as opined by Drs. Lundblad and Anderson. Pl.'s Opening Br. 15. However, any error is harmless if the representative occupations identified at step five would still be appropriate if the omitted limitation were included. <u>Stubbs-Danielson</u>, 539 F.3d at

1174. The opinions of Drs. Lundblad and Anderson regarding claimant's "moderate" impairment in attention and concentration do not necessarily preclude claimant from carrying out "detailed but uninvolved" instructions per their assigned Reasoning Level. D.O.T. Appendix C, <u>available at</u> 1991 WL 688702. This court has held that Reasoning Level 2 jobs are not inconsistent with simple, routine work. <u>See, e.g.</u> <u>Chalmers v. Colvin,</u>2014 WL 5488908, *9 (D.Or. October 28, 2014), <u>Patton v. Astrue</u>, 2013 WL 705909, *1 (D.Or. February 25, 2013). This court has also held that "an RFC to perform simple, repetitive tasks can be sufficient to accommodate a claimant's moderate limitations in attention, concentration, and social abilities." <u>See, e.g.</u>, <u>Brink v. Astrue</u>, 2013 WL 1785803, *5 (D.Or. Apr. 24, 2013), <u>Davis v. Astrue</u>, 2012 WL 4005553, *10-11 (D.Or. June 12, 2012). The court finds the reasoning and conclusions of these cases persuasive. Thus, based on the occupations the ALJ identified at step five, any error in failing to credit "moderate" impairment in attention and concentration was harmless. <u>Stubbs-Danielson</u>, 539 F.3d at 1174.

Plaintiff next alleges the ALJ erred in omitting a limitation requiring "a supervisor that is not overly harsh and critical." Pl.'s Opening Br. 15. However, there is no indication that such a limitation actually substantially

limits plaintiff from his work as articulated by the RFC. In fact, Drs. Lundblad and Anderson indicated plaintiff would not need special supervision, was not impaired in making simple work-related decisions, had the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms at a consistent pace, and critically, there was no evidence of limitation in plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 70-71, 86-87. Thus, the opinion of Dr. Lundblad (and affirmed by Dr. Anderson) is equivocal regarding plaintiff's supervisory needs. As it is the ALJ's responsibility to resolve conflicts and ambiguities in medical testimony, and because the ALJ's interpretation of the evidence is rational and supported by substantial evidence, this court will not disturb his finding. The ALJ did not err in weighing the Drs. Lundblad and Anderson's opinions regarding plaintiff's supervisory needs.

Plaintiff additionally contends the ALJ failed to incorporate Drs. Lundblad and Anderson's opinions that he "would not be able to reliably get along with peers/coworkers." Pl.'s Opening Br. 15; Tr. 71, 87. However, the ALJ formulated an RFC limiting plaintiff to occupations which do not require teamwork or close cooperation with

coworkers. Tr. 15. The ALJ's RFC reasonably accounts for the
doctors' opinion and therefore will not be displaced. Turner
v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010)
(RFC that limited claimant to "no public contact" and a work
environment in which it would be recognized that claimant
worked best alone satisfactorily integrated a physician's
opinion that claimant had "marked limitations in social
functioning.").

Regarding public contact, plaintiff argues that
"occasional" contact (defined as up to 1/3 of the workday)
does not comport with the doctors' opinion that plaintiff
"should not be expected to sustain effective public contact
other than those limited to brief and structured
interactions." Tr. 71, 87. It is not obvious to the court
that "unable to sustain effective public contact other than
those limited to brief and structured interactions" is
substantially more limiting than "occasional public
contact." However, it is clear the ALJ considered the
opinions of Drs. Lundblad and Anderson in curtailing
plaintiff's public interaction in crafting the RFC. To the
extent the doctors' opinion is somewhat ambiguous regarding
the amount of public interaction plaintiff can tolerate, it
was within the ALJ's authority to resolve the ambiguity.
Tommasetti, 533 F.3d at 1041-42. The ALJ's interpretation of

the evidence, even if not the only possible interpretation,
was reasonable, and therefore must be upheld. <u>Batson</u>, 359
F.3d at 1198. Moreover, as defendant noted, the occupations
identified by the ALJ at step five likely do not require any
public interaction whatsoever. Def.'s Br. 15. Accordingly,
any error was harmless. <u>Stubbs-Danielson</u>, 539 F.3d at 1174.

Finally, plaintiff argues the ALJ erred in evaluating
the opinion of Cindy Bowling, psychiatric mental health
nurse practitioner ("PMHNP"). Ms. Bowling is not an
"acceptable medical source," but rather an "other source"
under the regulations, 20 C.F.R. § 404.1513(d)(1). An "other
source" opinion may be rejected by providing a germane
reason. <u>Molina</u>, 674 F.3d at 1111 (citations omitted). The
ALJ gave Ms. Bowling's opinion "little weight" because it
did not "comport with the medical evidence of record as a
whole" and "seemed to be based on claimant's subjective
complaints." Tr. 19. Plaintiff argues Ms. Bowling's opinion
was not inconsistent with the medical record, and therefore
the ALJ's first reason was not germane. Pl.'s Reply Br. 8.
However, Ms. Bowling's assessment in certain areas reflected
significantly more severe limitations than, for example,
Drs. Lundblad and Anderson's opinions regarding plaintiff
performing activities within a schedule, maintaining regular
attendance, completing a normal workweek without

psychological based symptoms, and interacting appropriately with the public. <u>Compare</u> Tr. 70-71 <u>with</u> Tr. 347-48. Ms. Bowling's limitation opinions also do not comport with Dr. Cochran's objective findings; for example, Ms. Bowling opined claimant had "moderately severe" limitations in his ability to maintain attention and concentration, however, Dr. Cochran found no deficit in that area during his objective evaluation. <u>Compare</u> Tr. 347 <u>with</u> 386. Further, while Ms. Bowling indicated plaintiff "was unable to tolerate social interaction of any type," other physicians noted he was much less limited in terms of social interaction. <u>Compare</u> Tr. 345 <u>with</u> Tr. 392 (moderate limitation in getting along with coworkers or peers), 71 (moderate limitation in interaction with general public). As such, the ALJ provided at least one germane reason, supported by substantial evidence, to give Ms. Bowling's opinion little weight. Accordingly, his assessment is affirmed.

III. <u>Lay Witness Testimony</u>

Plaintiff's wife, Shirley Gilbert, provided written testimony which plaintiff argues was erroneously discounted by the ALJ. Pl.'s Opening Br. 23. The ALJ indicated that he gave Ms. Gilbert's testimony only "some weight" because it appeared to be based on plaintiff's subjective complaints.

Tr. 20. Specifically, the ALJ noted Ms. Gilbert's testimony that plaintiff was unable to walk more than two blocks without stopping to rest appeared to be based on his subjective complaints. Tr. 220. Indeed, that limitation is not supported by the medical records of claimant's primary physician, Dr. Jay Jamieson. Tr. See, e.g. Tr. 69, 319-328. Inconsistency within the record is a germane reason to reject lay witness testimony. Bayliss, 427 F.3d at 1218.

Plaintiff further contends the ALJ erroneously discredited Ms. Gilbert's testimony because she was an "unusually devoted spouse." Tr. 20. The ALJ's opinion was presumably shaped in response to Ms. Gilbert's continuing support of plaintiff despite his many extramarital affairs. Id. The court recognizes Ninth Circuit precedent which has found a "close relationship" with a claimant and "desire to help" as germane reasons to reject lay testimony. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). On the other hand, this court has held that a close personal relationship, without more, is not sufficient to discredit a lay witness. Noblit v. Colvin, 2014 WL 4059770, *8 (August 15, 2014). As discussed above, the ALJ here has identified at least one other germane reason to discredit Ms. Gilbert's testimony.

Moreover, even if the ALJ erred in identifying Ms.

Gilbert's marital devotion as a reason to discredit her testimony, the error would have been harmless. Ms. Gilbert's testimony regarding the extent of plaintiff's functional limitations were not substantially different, and certainly not greater, than plaintiff's allegations, whose credibility was appropriately rejected. Molina, 674 F.3d at 1122. Compare Tr. 31-55 (plaintiff's hearing testimony) with Tr. 215-221 (Ms. Gilbert's written testimony). Thus, the reasons the ALJ provided for rejecting plaintiff's testimony are equally applicable to Ms. Gilbert's. Molina, 674 F.3d at 1122. Any error was harmless.

## IV. RFC Formulation

Plaintiff also argues that the ALJ's RFC assessment was not based on substantial evidence. Pl.'s Opening Br. 4. The RFC is the most that a claimant can do despite his restrictions. See 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including a claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Similarly, an ALJ need include only credible limitations in questions to

the VE. <u>Batson</u>, 359 F.3d at 1997.

This court's assessment of the Commissioner's decision is "a highly deferential standard of review." <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision comports with the record as a whole, and is based on substantial evidence such that "a reasonable mind might accept it as adequate to support a conclusion." <u>Desrosiers v. Secretaty of H.H.S.</u>, 846 F.2d 573, 575-76 (9th Cir. 1988)(internal citations omitted). As discussed in detail above, the ALJ's RFC sufficiently included plaintiff's limitations which were based on substantial evidence in the record. To the extent the RFC did not reflect limitations mentioned in the record, the ALJ properly discounted the opinion evidence which was deemed not fully credible, and provided adequate reasoning for excluding it from the RFC.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

Page 25 - OPINION AND ORDER

IT IS SO ORDERED.

DATED this 31 day of March 2015.

_____
Ann Aiken
United States District Judge

Page 26 - OPINION AND ORDER